

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**12/10/2013**

| | | |
|---|---|---|
| In re: | § | Case No. 13-37200 |
| | § | |
| GOLDKING HOLDINGS, LLC, *et al.*,[1] | § | |
| | § | Chapter 11 |
| Debtors, | § | (Jointly Administered) |
| | § | |
| | § | |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POST-PETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, AND (5) MODIFYING AUTOMATIC STAY**

[Related to Doc No. 11]

THIS MATTER having come before the Court upon the motion [Docket No. 11] (the "**Motion**") of Goldking Resources, LLC ("**Goldking Resources**" or "**Borrower**"), Goldking Onshore Operating, LLC ("**Goldking Operating**"), and Goldking Holdings, LLC ("**Goldking Holdings**", and together with Goldking Operating, collectively the "**Guarantors**", and the Guarantors together with Goldking Resources, collectively the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an Interim Financing Order (the "**Interim Financing Order**") and a Permanent Financing Order (the "**Permanent Financing Order**"), seeking, among other relief:

---

[1]  The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Goldking Holdings, LLC (2614); Goldking Onshore Operating, LLC (2653); and Goldking Resources, LLC (2682). The mailing address for the Debtors is 777 Walker Street, Suite 2500, Houston, TX 77002.

(1)     authorization for Debtors to obtain post-petition loans, advances and other financial accommodations from Wayzata Opportunities Fund II, LP, ("**Wayzata**") as successor administrative agent (in such capacity, "**Agent**") to Bank of America, N.A. ("**BOA**") and as the Lender (in such capacity, the "**Lender**") under the Existing Credit Agreement (defined below), in accordance with the terms and conditions set forth in the Existing Credit Agreement (as defined below), as amended and ratified by the Ratification Agreement (as defined below), and in accordance with this Permanent Financing Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code.  All references herein to "Agent" or "Lender" shall be deemed to refer to and include Wayzata in either or both such capacities;

(2)     authorization for Debtors to enter into the Ratification and Amendment Agreement, dated October 31, 2013, by and among the Borrower, the Guarantors, and Lender (the "**Ratification Agreement**", as amended, a copy of which is attached hereto as Exhibit 1), which ratifies, extends, adopts and amends the Existing Credit Agreement and the other Existing Credit Documents (as defined below);

(3)     an order vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the relief requested herein; and

(4)     the grant to Agent of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Post-Petition Obligations (as defined in the Ratification Agreement).

The initial hearing on the Motion having been held by the United States Bankruptcy Court for the District of Delaware (the "**Delaware Court**") on October 31, 2013 (the "**Interim Hearing**"), and the final hearing on the Motion having been held by this Court on December 10,

2013 at 1:00 p.m. (the "**Final Hearing**"); and the Court having considered the Motion, the *Declaration of Edward Hebert in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 2], the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the Final Hearing; and the Delaware Court having entered the Interim Financing Order [Docket No. 26]; and the Court having found that the notice of the Final Hearing has been provided in accordance with the Bankruptcy Rules, the Local Rules of this Court, and the Bankruptcy Code, as set forth in Paragraph D; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested on a permanent basis is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    <u>Petition</u>.  On October 30, 2013 (the "**Petition Date**"), Debtors initiated these Cases by filing voluntary petitions (the "**Petitions**") under Chapter 11 of the Bankruptcy Code with the Delaware Court.  On November 20, 2013, the Delaware Court entered its Order Granting Motion of Leonard C. Tallerine, Jr. and Goldking Capital LT Corp to Transfer Venue Of These Cases (the "**Venue Transfer Order**") (Doc. No. 88) transferring venue of the Cases to this Court.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b) (2).  Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

> C.  <u>Debtors' Stipulations</u>.  After consultation with their attorneys, and subject to Section 4.1 of this Permanent Financing Order, each Debtor hereby admits, stipulates, acknowledges and agrees that:

> (i)  *Existing Credit Documents*.  Prior to the commencement of the Cases, Borrower entered into that certain Credit Agreement, dated November 5, 2010, by and among Borrower, the Guarantors, the financial institutions named therein, as banks, BOA, as administrative agent and issuing bank, and Banc of America Securities LLC, as lead arranger and book manager (as the same has heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, (the "**Existing Credit Agreement**"), a copy of which is attached to the Motion as Exhibit A).[2]  Pursuant to the Assignment and Acceptance (the "**Assignment and Acceptance**"), the Resignation, Assignment and Release Agreement (the "**Resignation**"), and the Release Agreement (the "**Release**", and together with the Assignment and Acceptance and the Resignation, each as amended, modified or supplemented from time to time, collectively the "**Assignment**"), each dated as of January 24, 2013, by and among Borrower, the Guarantors, BOA, and Agent (referred to hereinafter as the "**Lender**"), BOA assigned, sold and delegated all of its rights and obligations under the Existing Credit Agreement to Lender.  The Assignment was a valid, binding and enforceable assignment of the Existing Credit Agreement's rights and obligations from BOA to Lender. Prior to the Petition Date, Lender made loans, advances and provided other financial accommodations to

---

[2]  Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the Motion, the Existing Credit Agreement, the Ratification Agreement, and the Credit Agreement (as defined herein).

Borrower pursuant to the terms and conditions set forth in (1) the Existing Credit Agreement, and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Lender, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto, as assigned by BOA to Lender pursuant to the Assignment  (all of the foregoing, together with the Existing Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "**Existing Credit Documents**").

    (ii) *Pre-Petition Obligations Amount*.  As of the Petition Date, the aggregate amount of all obligations owing by Borrower to Lender under and in connection with the Existing Credit Documents was not less than $11,582,729.51, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, and as such term is more fully defined in the Ratification Agreement, the "**Pre-Petition Obligations**").  The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations.

    (iii) *Pre-Petition Collateral*.  As of the Petition Date, the Pre-Petition Obligations were fully secured pursuant to the Existing Credit Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by Debtors to

Lender upon all of the Pre-Petition Collateral, subject only to the liens specifically listed on Schedule 6.1 of the Existing Credit Agreement or permitted under Section 6.1 of the Existing Credit Agreement or applicable law to the extent that such security interests, liens or encumbrances are (a) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (b) senior to and have not been or are subject to being subordinated to Lender's liens on and security interests in the Pre-Petition Collateral or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (the "**Permitted Encumbrances**").  White Oak Energy V, LLC has a lien on certain property as evidenced by the Deed of Trust and Security Agreement executed by Goldking Resources on September 6, 2013 and recorded in the real property records of Jasper County, Texas (Instrument No. 251142) and Hardin County, Texas (Instrument No. 2013-41077) (the "**White Oak Lien**").  In accordance with the terms of the Compromise and Forbearance Agreement, made effective as of July 15, 2013 by and among Goldking Holdings, LLC, Goldking Resources, LLC, White Oak Energy V, LLC and White Oak Operating Company, LLC, as agreed to by Wayzata Opportunities Fund II, LP (the "**Forbearance Agreement**"), Lender agrees that, in the event of a foreclosure of its lien or a sale of the properties subject to the White Oak Lien, the balance of the Compromise Holdback (as defined in the Forbearance Agreement) owing to White Oak Energy V, LLC will be paid in full. The Debtors will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Lender's liens, claims or security interests in the Pre-Petition Collateral.

(iv)     *Proof of Claim*.  The Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of Lender as set forth herein and in the Existing

Credit Documents are hereby deemed a timely filed proof of claim on behalf of Lender in the Cases.

> D.      Findings Regarding the Post-petition Financing.

(i)      *Post-petition Financing*.  The Debtors have requested from Lender, and Lender is willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth, in this Permanent Financing Order and the Credit Documents (as defined below).

(ii)      *Need for Post-Petition Financing*.  The Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their businesses in the ordinary course of their business without the financing requested under the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of their estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with Lender as set forth in this Permanent Financing Order and the Credit Documents is vital to the preservation and maintenance of the going concern values of the Debtors and/or the Debtors' ability to conduct an orderly liquidation and/or sale of its assets to maximize the value thereof.  Accordingly, the Debtors have an immediate need to obtain post-petition financing in order to, among other things, permit the orderly continuation of the operation of its businesses, minimize the disruption of its business operations, and preserve and maximize the value of their assets in order to maximize the recovery to all creditors of the Debtors.

(iii)     *No Credit Available on More Favorable Terms*.  The Debtors are unable to obtain financing from sources other than Lender on terms more favorable than the Existing Credit Agreement.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a post-petition basis is not otherwise available without granting the Lender, (1) perfected security interests in and liens on (each as provided herein) all of the Post-Petition Collateral (2) superpriority claims, and (3) the other protections set forth in this Permanent Financing Order.

(iv)     *Budget*.  The Debtors have prepared and delivered to Lender an Budget (as defined in the Ratification Agreement).  Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the Projected Information for the periods covered thereby.  The Budget is attached as Exhibit 2.  The Debtors represent that the Budget is achievable in accordance with the terms of the Credit Documents and this Order.  Lender is relying upon the Debtors' compliance with the Budget in accordance with Section 5.3 of the Ratification Agreement, the other Credit Documents and this Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)     *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms of the Credit Documents and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the prudent business judgment of the Debtors, consistent with their fiduciary duties, and

are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Credit Documents and this Order have been negotiated in good faith and at arms' length by and among Borrower and Guarantors, on one hand, and the Lender, on the other hand, with all parties being represented by counsel.  Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by the Lender as that term is used in Section 364(e) of the Bankruptcy Code.

(vi)     *Good Cause*.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their respective estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(vii)     *Notice.*  The telephonic, facsimile, overnight mail and/or hand delivery notice of the Final Hearing, seeking entry of the Permanent Financing Order granting the Motion, has been provided to certain parties in interest, including: (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the Southern District of Texas; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors; (vi) counsel to the Lender; and (vii) all parties that have submitted written requests for notice in the Cases.  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Permanent Financing Order, and no other or further notice is or shall be required.

(viii)  *Immediate Entry*.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2).  Absent entry of this Permanent Financing Order, the Debtors' business, properties and estates will be immediately and irreparably harmed.  Accordingly, this Court concludes that entry of this Permanent Financing Order is necessary to avoid immediate and irreparable harm to the Debtors, and is in the best interests of the Debtors' estate and creditors.  Any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

(ix)  Based upon the foregoing, and after due consideration and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

Section 1.  Authorization and Conditions to Financing.

1.1  Motion Granted on a Final Basis.  The Motion is **GRANTED** on a final basis in accordance with Bankruptcy Rule 4001(c)(2), subject to the terms and conditions set forth herein.

1.2  Authorization to Borrow and Use Loan Proceeds.  The Debtors are hereby authorized and empowered to immediately borrow, obtain and incur indebtedness and obligations owing to Lender pursuant to the terms and conditions of this Permanent Financing Order, the Existing Credit Agreement (as such term is more fully defined in the Ratification Agreement), as ratified and amended by the Ratification Agreement (the "**Credit Agreement**,"), and the other Existing Credit Documents (as such term is more fully defined in the Ratification Agreement), as ratified and amended by the Ratification Agreement (the "**Credit Documents**,"), in such amounts as may be made available to Borrower by Lender in accordance with the Budget.  Subject to the terms and conditions contained in this Permanent Financing Order and the Credit Documents, including Section 5.2 of the Ratification Agreement, Debtors shall use the proceeds of the Loans and any other credit accommodations provided to or for the benefit of

Debtors pursuant to this Permanent Financing Order, the Credit Agreement or the other Credit Documents for, inter alia, the payment of employee salaries, payroll, taxes, and all other expenses specified in the Budget for other operating and working capital purposes, including, without limitation, the Hedging Obligations (including any amounts for the Hedging Obligations related to the period prior to the Petition Date), in the ordinary course of Debtors' business in accordance with the Credit Documents, including the fees of the U.S. Trustee, the Clerk of this Court and, subject to Section 2.3 of this Permanent Financing Order, Allowed Professional Fees (as defined below).

  1.3  Credit Documents

    1.3.1 Authorization. Debtors are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Credit Agreement, the other Credit Documents and all other agreements, documents and instruments executed or delivered in connection with or related to the Credit Agreement, the other Credit Documents or this Permanent Financing Order, including, without limitation, the Ratification Agreement, pursuant to which, inter alia, Debtors ratify, reaffirm, extend, assume, adopt, amend, and restate the Existing Credit Agreement and the other Existing Credit Documents to which they are a party, including, any lockbox, blocked depository bank account arrangements or other cash management systems provided under the Credit Agreement (collectively, the "**Account Control Agreement**").

    1.3.2 Approval. The Credit Documents (including, without limitation, the Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Permanent Financing Order.  All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among Debtors and Lender, and of Debtors' assumption and adoption of all of the terms, conditions, and covenants of the Credit Agreement and the other Credit Documents for all purposes, including, without

limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees, unused line fees, DIP Facility Fee, closing fees, early termination fees, and other fees and expenses, including, without limitation, all of Lender's reasonable consultant fees, reasonable professional fees, reasonable attorney fees and legal expenses, as more fully set forth in the Credit Documents.

        1.3.3   <u>Amendment.</u>  Subject to the terms and conditions of the Credit Agreement and the other Credit Documents, Debtors and Lender may amend, modify, supplement or waive any provision of the Credit Documents (an "**<u>Amendment</u>**") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean, any Amendment that operates to increase the interest rate other than as currently provided in the Credit Documents, increase the Availability (as defined in the Credit Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to the Lender following an event of default, or otherwise modify any terms and conditions in any Credit Document in a manner materially less favorable to Debtors) and is undertaken in good faith by Lender and Debtors; (ii) the Debtors provide prior written notice of the Amendment (the "**<u>Amendment Notice</u>**") to (a) the U.S. Trustee, (b) counsel to any official committee appointed in the Cases under Section 1102 of the Bankruptcy Code (collectively, the "**<u>Committee(s)</u>**"), or in the event no such Committee is appointed at the time of such Amendment, the Debtors' 30 largest unsecured creditors, and (c) respective counsel to Leonard C. Tallerine, Jr., Goldking LT Capital Corporation, White Oak Energy V, LLC and White Oak Operating Company, LLC (collectively "**<u>White Oak</u>**"); (iii) Debtors file the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within ~~two (2)~~ five (5) business days from the later of the date the Amendment Notice is served or

the date the Amendment Notice is filed with the Court in accordance with this Section.  Any

material Amendment to the Credit Documents must be approved by the Court to be effective.

1.4    <u>Payment of Pre-Petition Debt</u>.  The Debtors are authorized to pay Lender

in respect of all Pre-Petition Obligations in accordance with Sections 1.5 and 1.6 of this

Permanent Financing Order.  However, the Debtors shall not be responsible for payment of any

prepayment penalty under the Existing Credit Agreement.

1.5    <u>Payments and Application of Payments</u>.  The Debtors are authorized to

make all payments and transfers of estate property to Lender as provided, permitted and/or

required under the Credit Agreement and the other Credit Documents, which payments and

transfers, subject to Section 4.1 herein, shall not be avoidable or recoverable from Lender under

Section 547, 548, 550, 553 or any other Section of the Bankruptcy Code, or any other claim,

charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law

or otherwise.  All proceeds of the Collateral received by Lender, and any other amounts or

payments received by Lender in respect of the Prepetition Obligations and Post-Petition

Obligations, shall be applied or deemed to be applied by Lender in accordance with the Credit

Agreement, the other Credit Documents and this Permanent Financing Order first to all Pre-

Petition Obligations, until such Pre-Petition Obligations are indefeasibly paid in full and

completely satisfied, and then to the Post-Petition Obligations.  Without limiting the generality

of the foregoing, the Debtors are authorized, without further order of this Court, provided that

copies of the invoices (redacted for privilege) have been delivered to the Office of the U.S.

Trustee, counsel to any official committee(s) appointed in the Cases, and counsel to Leonard C.

Tallerine, Jr. and Goldking LT Capital Corporation, and no objection has been filed with the

Bankruptcy Court within five (5) days, to pay or reimburse Lender for all present and future

costs and expenses, including, without limitation, the DIP Facility Fee subject to the terms and

conditions set forth in the Ratification Agreement, all reasonable professional fees, reasonable

consultant fees and reasonable legal fees and expenses paid or incurred by Lender in connection

with the financing transactions as provided in this Permanent Financing Order and the Credit

Documents, all of which shall be and are included as part of the Obligations and secured by the

Collateral. `Nothing herein shall prevent any party from objecting to the total allowed amount of the Lender's fees and expenses.`

        1.6    <u>Continuation of Pre-petition Procedures</u>.  All pre-petition practices and

procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the

delivery of property to Lender and the funding pursuant to the Credit Documents, including the

Account Control Agreement, and any other similar lockbox or blocked depository bank account

arrangements, are hereby approved and shall continue without interruption after the

commencement of the Cases.

        1.7    <u>Post-financing Milestones</u>.

        1.7.1   Not later than one hundred twenty (120) days after the Petition

Date, an order in form and substance satisfactory to Lender (the "**Bidding Procedures Order**")

shall have been entered by the Court authorizing and approving an auction and auction

procedures for the selection of a liquidator and/or a going concern purchaser in connection with

any potential sale of the business and assets of Borrower and Guarantors (if applicable) in any

liquidation and/or going concern sales, as applicable, to the highest and best bidder, on terms and

conditions reasonably acceptable to Lender.

        1.7.2   Not later than sixty (60) days after the date the Court enters the

Bidding Procedures Order, an order in form and substance reasonably satisfactory to Lender (the

"**Sale Order**") shall have been entered by the Court approving the selection of a purchaser and

the sale of the business and/or assets of the Borrower and Guarantors (if applicable) to such

purchaser, in each case on terms and conditions reasonably acceptable to Lender.

1.7.3   Any liquidation or going concern sales shall be consummated, not later than the one hundred eightieth day (180th) day following the Petition Date on terms and conditions reasonably acceptable to Lender; provided, however, that upon the consent of Lender, this deadline may be extended by thirty (30) days in order to facilitate the cure of any issues pertaining to the title and transfer of the Debtors' assets or properties to the prevailing purchaser.

1.7.4   Not later than one hundred ten (110) days after the Petition Date, Borrower and Guarantors shall have filed with the Court a disclosure statement and a plan of reorganization or liquidation (as applicable), and motion and proposed form order (in form and substance satisfactory to Lender) seeking approval of Court, on terms and conditions acceptable to Lender or which provides for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions therein.

1.7.5   Not later than one hundred fifty (150) days after the Petition Date, the Court shall have approved the disclosure statement on terms and conditions acceptable to Lender or which provides for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions therein.

1.7.6   Not later than one hundred eighty (180) days after the Petition Date, the Court shall have confirmed the plan of reorganization or liquidation (as applicable) on terms and conditions acceptable to Lender or which provides for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions therein.

Section 2.   Post-petition Lien and Superpriority Administrative Claim Status.

2.1   Post-Petition Lien.

2.1.1   Post-Petition Lien Granting.   To secure the prompt payment and performance of any and all Obligations (including, without limitation, all Pre-Petition Obligations and Post-Petition Obligations) of Debtors  to Lender of whatever kind, nature or

description, absolute or contingent, now existing or hereafter arising, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, Lender shall have and is hereby granted, effective as of the Petition Date, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected post-petition security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' estates may have (but subject to certain claims entitled to priority, including the Permitted Liens and Claims (as defined below), as and to the extent expressly provided in Section 2.1.2 below), in and upon all of the Pre-Petition Collateral and the Post-Petition Collateral (the Pre-Petition Collateral and the Post-Petition Collateral, together the "**Collateral**").  Notwithstanding anything to the contrary in this Permanent Financing Order or in the Credit Documents, Lender shall not be granted any liens on or security interests in avoidance actions brought under Sections 542, 545, 547, 548, 549 or 550 of the Bankruptcy Code (together, the "**Avoidance Actions**") to secure the Obligations. In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of Obligations secured by such Collateral after satisfaction of the Post-Petition Obligations of Debtors to Lender, shall constitute additional security for the repayment of the Pre-Petition Obligations and adequate protection for the use by Debtors, and the diminution in the value, of the Collateral existing on the Petition Date.

2.1.2   <u>Lien Priority</u>.  The pre-petition and post-petition liens and security interests granted by Debtors to Lender under the Credit Documents and this Permanent Financing Order in the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; <u>provided</u>, <u>however</u>, that Lender's liens on and security

interests in the Collateral shall be subject only to (i) the Permitted Liens; (ii) the White Oak Lien; (iii) the Carve Out Expenses (as defined below) solely to the extent provided for in Sections 2.3, 2.4 and 2.5 of this Permanent Financing Order; and (iv) any valid right to setoff of White Oak preserved pursuant to Section 553 of the Bankruptcy Code, including, to the extent applicable, any valid claim for setoff entitled to treatment as an allowed secured claim pursuant to Section 506(a) of the Bankruptcy Code, it being understood that any such valid secured claim shall be superior to and entitled to priority over Lender's security interests and liens granted in this Permanent Financing Order and the Credit Documents (the foregoing clauses (i), (ii), (iii), and (iv) are collectively referred to herein as the "**Permitted Liens and Claims**").   Nothing contained in this Permanent Financing Order shall be construed as an admission by the Debtors or Lender that White Oak has any right to setoff or any secured claim based upon setoff rights and the Debtors and Wayzata reserve all rights to object or otherwise challenge the exercise of any right to setoff and any secured claim asserted by White Oak based upon alleged setoff rights.

　　　　　2.1.3   <u>Post-Petition Lien Perfection</u>.   This Permanent Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution that is a party to any agreement related to an Account Control Agreement consisting of Collateral (a "**Perfection Act**").   Notwithstanding the foregoing, if Lender shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Lender is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been

accomplished as of the date and time of entry of this Permanent Financing Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Lender may choose to file, record or present a certified copy of this Permanent Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Permanent Financing Order in accordance with applicable law.  Should Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Permanent Financing Order.

2.1.4   <u>Nullifying Pre-Petition Restrictions to Post-Petition Financing.</u> Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which Debtors are a party or under which the Debtors are obligated, except as otherwise permitted under the Credit Documents, any provision that restricts, limits or impairs Debtors from in any way granting Lender security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which Debtors are a party) under the Credit Agreement, the other Credit Documents or this Permanent Financing Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the Credit Documents shall <u>not</u> (i) be effective and/or enforceable against either Debtors or Lender, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted by Debtors to Lender pursuant to this Permanent Financing Order or the Credit Documents; provided, however, that

nothing contained in this Section 2.1.4, the Permanent Financing Order, or the Credit Documents shall modify, amend, or nullify or otherwise affect the Forbearance Agreement.[3]

2.2 <u>Superpriority Administrative Expense</u>.  For all Obligations now existing or hereafter arising pursuant to this Permanent Financing Order, the Credit Documents or otherwise, Lender is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "**Superpriority Claim**"), <u>provided</u>, <u>however</u>, the Superpriority Claim shall be subject only to the Permitted Liens and Claims as and to the extent expressly set forth in this Permanent Financing Order.

2.3 <u>Carve Out Expenses</u>.

2.3.1 <u>Carve Out Expenses</u>.  Upon the declaration by Lender of the occurrence of an Event of Default, which is not waived or cured, Lender's liens, claims and security interests in the Collateral and their Superpriority Claim shall be subject only to the right of payment of the following expenses (collectively, the "**Carve Out Expenses**"):

a. statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

b. fees payable to the Clerk of this Court; and

c. all costs, fees, expenses, and other charges accrued, accruing or chargeable, whether paid or unpaid as provided in the Budget (or as

---

[3] This shall include an undertaking to provide in any Budget for the month of July 2014 provision for payment of a bond premium in the amount of approximately $19,000 on account of the Berry Lake Property.

otherwise approved by the Lender) related to the Debtors' plugging and abandonment activities in the Kent Bayou (the "Kent Bayou P&A Costs"), which budgeted amounts will not be reduced without the consent of Lender and White Oak; and

    d.  subject to the terms and conditions of this Permanent Financing Order, the unpaid, budgeted and outstanding reasonable fees and expenses actually incurred on or after the Petition Date through the occurrence of an Event of Default, and approved or permitted by an order of the Court pursuant to Sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "**Allowed Professional Fees**"), by attorneys, accountants and other professionals retained by the Debtors (collectively, the "**Debtors' Professionals**"), plus an aggregate sum not to exceed $150,000.00 subsequent to the occurrence of an Event of Default (the "**Professional Fee Carve Out**").  The Professional Fee Carve Out shall also apply to the professionals employed by any statutory committee, if appointed.

    2.3.2 Excluded Professional Fees.  Notwithstanding anything to the contrary in this Permanent Financing Order, neither the Professional Fee Carve Out nor the proceeds of any Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in or any investigation into any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Lender's liens on and security interests in the Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or Lender's liens on and security interests in the Collateral, or (iii) preventing, hindering or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or

realization upon any Collateral in accordance with the terms and conditions of this Permanent Financing Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Lender in accordance with the terms and conditions of this Permanent Financing Order, (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than from Lender, without the prior written consent of Lender, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Lender under Chapter 5 of the Bankruptcy Code, or (e) any act which results in the occurrence of an Event of Default, which is not waived or cured, under the Credit Documents or this Permanent Financing Order; provided, however, that any statutory committee, if appointed, may use up to $15,000.00 to investigate the liens of, or claims against, the Lender.

      2.4    <u>Carve Out Reserve</u>.  At Lender's sole discretion, Lender may, at any time and in any increment up to the aggregate amount of the Professional Fee Carve Out and the other Carve Out Expenses in accordance with the Credit Agreement, establish a Reserve against the amount of all credit accommodations that would otherwise be made available to Debtors pursuant to the lending formulae contained in the Credit Agreement in respect of the Professional Fee Carve Out and the other Carve Out Expenses.

      2.5    <u>Payment of Carve Out Expenses</u>.

      2.5.1   Prior to the occurrence of an Event of Default, Debtors shall pay the Kent Bayou P&A Costs in accordance with the Budget and shall be permitted to pay Allowed Professional Fees of the Professionals in accordance with the Budget and any such Allowed

Professional Fees paid prior to the occurrence of an Event of Default shall not reduce the $150,000.00 limitation in the Professional Fee Carve-Out.

     2.5.2 Any payment or reimbursement made either directly by Lender at any time, or by or on behalf of the Debtors on or after the occurrence of an Event of Default which is not waived or cured, in respect of any Allowed Professional Fees or any other Carve Out Expenses (exclusive of the application of any retainers by any of the Professionals) shall, in either case, permanently reduce the Professional Fee Carve Out on a dollar-for-dollar basis; provided, however that to the extent the $150,000.00 limitation on the Professional Fee Carve-Out is reduced by any amount as a result of payment of such fees and expenses on and after the occurrence of an Event of Default, and such Event of Default is thereafter waived in writing by Lender, then upon the effectiveness of such waiver, the amount of the Professional Fee Carve Out shall be increased by an amount equal to the amount by which it was reduced following such Event of Default (but in no event shall the Professional Fee Carve Out exceed $150,000.00). Lender's obligation to fund or otherwise pay the Professional Fee Carve Out and the other Carve Out Expenses shall be added to and made a part of the Obligations, secured by the Collateral, and entitle Lender to all of the rights, claims, liens, priorities and protections under this Permanent Financing Order, the Credit Documents, the Bankruptcy Code or applicable law. Payment of any Carve Out Expenses, whether by or on behalf of Lender, shall not, and shall not be deemed to, reduce the Obligations, and shall not and shall not be deemed to subordinate any of Lender's liens and security interests in the Collateral or their Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Except as otherwise provided herein with respect to the Professional Fee Carve Out and the other Carve Out Expenses, Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the

Cases under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4 or 2.5 of this Permanent Financing Order shall be construed to obligate Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

   2.6  <u>Use of Cash Collateral; Adequate Protection.</u>

    2.6.1 <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Permanent Financing Order, the Credit Agreement and the other Credit Documents, and in accordance with the Budget, Debtors shall be and are hereby authorized to use, until the expiration of Lender's commitment to lend under the Credit Agreement and the other Credit Documents, the Cash Collateral (as defined in Section 363 of the Bankruptcy Code) subject to the pre-petition liens and security interests granted to the Lender.  Nothing in this Permanent Financing Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or Debtors' use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Permanent Financing Order, the Credit Agreement, the other Credit Documents and in accordance with the Budget.

    2.6.2 <u>Replacement Liens</u>.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out-Expenses, the Lender is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "**Replacement Lien**").  The Replacement Lien shall be junior and subordinate only to the Permitted Liens and Claims and the liens and security interests granted to Lender in the Collateral securing the Post-Petition Obligations and shall otherwise be senior to all other security interests in, liens on, or

claims against any of the Collateral.  Notwithstanding anything to the contrary in this Permanent Financing Order or the Credit Documents, Lender shall not be granted a Replacement Lien on any Avoidance Actions or the proceeds thereof.

        2.6.3   <u>Section 507(b) Priority Claim</u>.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out-Expenses, the Lender is hereby granted as and to the extent provided by Section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases and any conversion thereof to a case under chapter 7 to the extent of such diminution in value (the "**Adequate Protection Superpriority Claim**").  The Adequate Protection Superpriority Claim shall be junior only to the Carve-Out Expenses and shall otherwise have priority over all administrative expense claims under 11 U.S.C. §§ 503(b), 506(c), and 507(b) and unsecured claims against Debtors and their estates now existing or hereafter arising.

        2.6.4   <u>Other Adequate Protection</u>.  As further adequate protection, Debtor is hereby authorized to provide adequate protection to Lender, in its capacity as post-petition lender, in the form of: (a) payment of interest, reasonable fees and other amounts due under the Existing Credit Documents, at the times specified therein, to Lender, and (b) ongoing payment of the reasonable fees, costs and expenses, including, without limitation, reasonable legal and other professionals' fees and expenses, of Lender as required under the Existing Credit Documents.

Section 3.      <u>Events of Default, Rights and Remedies, and Relief from Stay</u>.

        3.1   <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "**Event of Default**" under this Permanent Financing Order:

a.      Debtors' failure to comply with the terms, conditions or provisions under this Permanent Financing Order, or an event of default as defined and described elsewhere in this Permanent Financing Order occurs; or

b.      An "Event of Default" under the Credit Agreement or any of the other Credit Documents.

3.2     <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, which is not waived or cured, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Permanent Financing Order, the Credit Agreement and the other Credit Documents, and (ii) Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Permanent Financing Order or any Credit Document, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans or provide or arrange for Letter of Credit Obligations on behalf of Debtors, setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral.  Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3     <u>Expiration of Commitment</u>.  Upon the expiration of Borrower's authority to borrow and obtain other credit accommodations from Lender pursuant to the terms of this Permanent Financing Order and the Credit Documents (except if such authority shall be extended with the prior written consent of Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by Lender), unless an Event of Default set

forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Permanent Financing Order, all of the Obligations shall immediately become due and payable and Lender shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to Lender pursuant to the terms and conditions of the Credit Documents or this Permanent Financing Order, and Lender shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Permanent Financing Order, the Credit Documents or applicable law which Lender may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' estates.

           3.4     <u>Relief from Automatic Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under or by virtue of this Permanent Financing Order or the Credit Documents, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Permanent Financing Order and pursuant to the terms of the Credit Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Credit Documents, and apply such payments to the Obligations pursuant to the Credit Documents and this Permanent Financing Order.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default, which is not waived or cured, and after providing five (5) business days prior written notice (the "**<u>Enforcement Notice</u>**") to (a) counsel for the

Debtors, (b) counsel to Leonard C. Tallerine, Jr. and Goldking LT Capital Corporation, (c) counsel to White Oak Energy V, LLC and White Oak Operating Company, LLC, (d) counsel for the Committee (if appointed), and (e) the U.S. Trustee, Lender shall be entitled to take any action and exercise all rights and remedies provided to it by this Permanent Financing Order, the Credit Documents or applicable law as Lender  may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtors' estate upon which Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations.  Nothing contained in this Permanent Financing Order (including Section 3 hereof) shall prevent the Debtors, any statutory committee appointed in this case or any other interested parties from requesting a hearing to contest or challenge the existence or continuance of an Event of Default.

Section 4.       Representations, Covenants and Waivers.

4.1      Objections to Pre-Petition Obligations.  Any action, claim or defense (hereinafter, an "**Objection**") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or otherwise, (a) the existence, validity or amount of the Pre-Petition Obligations, (b) the extent, legality, validity, perfection or enforceability of Lender's pre-petition liens and security interests in the Pre-Petition Collateral, (c) Lender's right to apply proceeds of Post-Petition Collateral against Post-Petition Obligations in satisfaction of Lender's post-petition liens as provided for in this Permanent Financing Order, (d) Lender's right to apply proceeds of Post-Petition Collateral against Pre-Petition Obligations in satisfaction of Lender's pre-petition liens as provided for in this Permanent Financing Order, or (e) the Debtors' stipulations set forth in this Permanent Financing Order, including the release of all claims against the Lender, shall be filed with the Court (x) by any Official Committee of Unsecured Creditors within sixty (60) calendar days

from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in

interest with requisite standing within seventy-five (75) calendar

days from the date of entry of this Permanent Financing Order.  If any such Objection is timely

filed and successfully pursued, nothing in this Permanent Financing Order shall prevent the

Court from granting appropriate relief with respect to the Pre-Petition Obligations or Lender's

liens on the Pre-Petition Collateral.  If no Objection is timely filed, or if an Objection is timely

filed but denied, (a) the Pre-Petition Obligations shall be deemed allowed in full, shall not be

subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be

subject to any further objection or challenge by any party at any time, and Lender's pre-petition

liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid,

perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject

to only the Permitted Liens and Claims, and (b) the Debtors' stipulations set forth in this

Permanent Financing Order shall be binding on all parties, and Lender and each of its respective

participants, agents, officers, directors, employees, attorneys, professionals, successors, and

assigns shall be deemed released and discharged from any and all claims and causes of action

related to or arising out of the Existing Credit Documents or any action or inaction of Lender

(solely in its capacity as Lender) prior to the date hereof, and shall not be subject to any further

objection or challenge by any party at any time.  Nothing contained in this Section 4.1 or

otherwise shall or shall be deemed or construed to expand, impair, prejudice or waive any rights,

claims or protections afforded to Lender in connection with all post-petition financing and credit

accommodations provided by Lender to Debtors in reliance on Section 364(e) of the Bankruptcy

Code and in accordance with the terms and provisions of this Permanent Financing Order and the

Credit Documents.

4.2     <u>Debtors' Waivers</u>.  At all times during the Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek authority (i) to use Cash Collateral of Lender under Section 363 of the Bankruptcy Code, except as otherwise expressly provided for herein, (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from Lender or as may be otherwise expressly permitted pursuant to the Credit Agreement, provided, however, that the Lender may consent to the filing of a motion to approve a replacement debtor-in-possession financing which comports with the provisions of Section 5.7 of this Permanent Financing Order and indefeasibly pays in full the Obligations in accordance with the terms of the Credit Documents and this Permanent Financing Order, (iii) to challenge the application of any payments authorized by this Permanent Financing Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (iv) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in this Permanent Financing Order and the Ratification Agreement, (v) to challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of Lender's pre-petition and post-petition liens and claims (subject to the rights of the Committee and/or any party in interest under Section 4.1 of this Permanent Financing Order), (vi) to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations or (vii) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Permanent Financing Order and the Credit Documents or Lender's exercise of such rights or remedies; <u>provided</u>, <u>however</u>, that Lender may otherwise consent in

writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender.  For the avoidance of doubt, any trustee appointed or elected in the Cases shall, until the expiration of the period provided herein for asserting challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this section (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Permanent Financing Order.

4.3     Section 506(c) Claims.  No costs or expenses of administration which have or may be incurred in the Cases shall be charged against Lender, their respective claims or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

4.4     Collateral Rights.  Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

4.4.1   absent a further order from this Court, no other party shall foreclose or otherwise enforce any junior lien or claim in any Collateral; and

4.4.2   upon and after the occurrence of an Event of Default, and subject to Lender obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, subject to applicable non-bankruptcy law and, at the sole cost and expense of Debtors, to (collectively, the "**Access Rights**"): (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors and (ii) use any and all trademarks,

tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses; provided, that, for purposes of this Permanent Financing Order, the Lender's exercise of its Access Rights shall be limited to (i) access and use permitted in accordance with applicable state law, (ii) the consent of the applicable landlord, lessor or owner, or (iii) a further order of this Court (which may be obtained on shortened notice) authorizing such access and use.  Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Lender actually occupies or uses such assets or properties).

      4.5    <u>Release</u>.

         4.5.1    <u>Release of Lender, Agent and Certain Related Parties</u>.  Subject to Section 4.1 above, in consideration of Lender making post-petition loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Credit Documents and this Permanent Financing Order, Debtors, on behalf of themselves and their successors, assigns and other legal representatives, (collectively, the "**Releasors**"), absolutely, unconditionally and irrevocably release, remise and forever discharge Lender (solely in its capacity as Lender), its successors and assigns, and, solely to the extent of their respective relationship with Lender in its capacity as Lender only, its present and former participants, agents, officers, directors, shareholders, affiliates, subsidiaries, divisions, employees, attorneys, professionals and other representatives, but solely to the extent of such parties' relationship to Lender in its sole capacity as Lender (collectively, the "**Releasees**") of and from any and all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements,

promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever, of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Releasors may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Agreement Effective Date (as defined in the Ratification Agreement) for or on account of, or in relation to, or in any way in connection with the Credit Agreement, provided that such release does not apply in cases of fraud, gross negligence or willful misconduct of any Releasee.

4.5.2 <u>Limited Effect of Release</u>. For the avoidance of doubt, nothing in this Permanent Financing Order or the Ratification Agreement shall be deemed to be or construed  as a release of any demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever, of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which (i) Releasors may now or hereafter own, hold, have or claim to have against the Releasees for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Agreement Effective Date for or on account of, or in relation to, or in any way in connection with Lender's role as equity owner of the Debtors, (ii) Releasors or any non-Debtors may now or hereafter own, hold, have or claim to have against any present and former participants, agents, officers, directors, shareholders, affiliates, subsidiaries, divisions, employees, attorneys, professionals and other representatives of Releasees for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Agreement Effective Date for or on account of, or in relation

to, or in any way in connection with any actions or inactions taken by such parties other than in the sole context of Lender's capacity as Lender, (iii) have been asserted by any non-Debtors in the Litigation.[4]  In addition, upon the repayment of all Obligations owed to Lender by Debtors and termination of the rights and obligations arising under the Credit Documents, the applicable Financing Order, as the case may be (which payment and termination shall be on terms and conditions acceptable to Lender), Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Credit Documents or the applicable Financing Order (including, without limitation, any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses), on terms and conditions acceptable to Lender.

Section 5.       <u>Other Rights and Obligations</u>.

      5.1     <u>No Modification or Stay of This Permanent Financing Order</u>. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Permanent Financing Order, the Credit Documents or any term hereunder or thereunder, (ii) the failure to obtain a Permanent Financing Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of one or more of the Cases (each, a "**<u>Subject Event</u>**"), (a) the acts taken by Lender in accordance with this Permanent Financing Order, and (b) the Post-Petition Obligations incurred or arising prior to Lender's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Permanent Financing Order, and the acts taken by Lender in accordance with this Permanent Financing Order, and the

---

[4]       As defined in the Declaration of Edward Hebert in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 2].

liens granted to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Permanent Financing Order and the Credit Documents shall remain valid and in full force and effect.  The foregoing shall not be construed to expand the rights and protections of section 364(e) of the Bankruptcy Code.  Lender is hereby granted all of the rights and protections of section 364(e) with regard to, *inter alia*, the Post-Petition Obligations, the post-petition liens granted in the Collateral, and the priorities granted to such liens and claims pursuant to this Permanent Financing Order.

      5.2    <u>Power to Waive Rights and Duties to Third Parties</u>.  Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Permanent Financing Order in respect of Lender (the "**Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by Lender of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to Lender.

      5.3    <u>Disposition of Collateral</u>.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior express written consent of Lender (and such consent shall not be implied in any way from any action, inaction or acquiescence by Lender) and an order of this Court, except for sales of Debtors' Inventory in the ordinary course of business and as otherwise expressly permitted in the Ratification Agreement; provided, however, that the Lender may consent to the filing of a motion to approve replacement debtor-in-possession financing which comports with the provisions of Section 5.7 of this Permanent Financing Order and indefeasibly pays in full the Obligations in accordance with the

terms of the Credit Documents and this Permanent Financing Order. Debtors shall remit to Lender, or cause to be remitted to Lender, all proceeds of the Collateral for application by Lender to the Obligations, in such order and manner as Lender may determine in its discretion, in accordance with the terms of this Permanent Financing Order, the Credit Agreement and the other Credit Documents.

       5.4    <u>Inventory</u>. Debtors shall not, without the prior express written consent of Lender, (a) enter into any agreement to return any inventory to any of its creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

       5.5    <u>Reservation of Rights</u>. The terms, conditions and provisions of this Permanent Financing Order are in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Credit Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Debtors' estates.

       5.6    <u>Binding Effect</u>.

       5.6.1    The provisions of this Permanent Financing Order and the Credit Documents, the Post-Petition Obligations, Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Lender provided or acknowledged in this Permanent

Financing Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Permanent Financing Order pursuant to Bankruptcy Rules 6004(h) and 7062, shall continue in full force and effect, and to the extent permitted by applicable law, shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

5.6.2   Notwithstanding any subsequent dismissal of the Cases: (a) the Lender's liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the liens in the Collateral.

5.6.3   In the event this Court modifies any of the provisions of this Permanent Financing Order or the Credit Documents following the Final Hearing, (a) such modifications shall not affect the rights or priorities of Lender pursuant to this Permanent Financing Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and (b) this Permanent Financing Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

5.6.4   This Permanent Financing Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of Debtors.  This Permanent Financing Order shall also inure to the benefit of Lender, Debtors and their respective successors and assigns.

5.7   Restrictions on Cash Collateral Use, Additional Financing, and Plan Treatment.  All post-petition advances and other financial accommodations under the Credit

Agreement and the other Credit Documents are made in reliance on this Permanent Financing Order. It shall be an immediate event of default under Section 3.1 of this Permanent Financing Order if, at any time in the Cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, the Court enters an order (other than the Permanent Financing Order) which (a) authorizes the use of cash collateral of Debtors in which Lender has an interest, or the sale, lease, or other disposition of property of Debtors' estates in which Lender has a lien or security interest, except as expressly permitted hereunder or in the Credit Documents, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Lender herein; unless, in each instance (i) Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (ii) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Credit Documents, including, without limitation, all debts and obligations of Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender. The security interests and liens granted to or for the benefit of Lender hereunder and the rights of Lender pursuant to this Permanent Financing Order and the Credit Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors and, if Lender shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

5.8     No Owner/Operator Liability.  In determining to make any loan under the Credit Agreement, the other Credit Documents or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the Credit Documents or any Financing Order, Lender (solely in its capacity as Lender and not in its capacity as equity owner of the Debtors or in any other capacity) shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

5.9     Marshalling.  In no event shall Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

5.10     Term and Termination.  The term of the financing arrangements among Debtors and Lender authorized by this Permanent Financing Order may be terminated pursuant to the terms of the Credit Agreement; provided, however, in the event of a conflict between the terms of the Credit Documents and this Permanent Financing Order with respect to the term of the financing arrangements, the terms and provisions of this Permanent Financing Order shall govern, interpreted as most consistent with the terms and provisions of the Credit Documents.

5.11     Conflicts.  Unless the Permanent Financing Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Credit Documents and this Permanent Financing Order, the terms and provisions of this Permanent Financing Order shall govern.

5.12     Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Permanent Financing Order according to its terms.

5.13   <u>Objections Overruled</u>.   All objections to the entry of this Permanent
Financing Order are, to the extent not withdrawn, hereby overruled.


**Signed:  December 10, 2013.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

AGREED AS TO FORM AND SUBSTANCE:

| | |
|---|---|
| **Young Conaway Stargatt & Taylor, LLP** | **Richards, Layton & Finger, P.A.** |
| Edmon L. Morton (No. 3856)<br>Robert F. Poppiti, Jr. (No. 5052)<br>Young Conaway Stargatt & Taylor, LLP<br>1000 North King Street, Rodney Square<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253 | John H. Knight, Pro Hac Vice<br>Michael J. Merchant, Pro Hac Vice<br>Marcos A. Ramos<br>William A. Romanowicz<br>Richards, Layton & Finger, P.A.<br>920 King Street<br>Wilmington, Delaware 19801<br>(302) 651-7700<br>(302) 651-7701 (fax) |
| —and— | —and— |
| **Haynes and Boone, LLP** | **Porter Hedges LLP** |
| */s/ Patrick L. Hughes*<br>Patrick L. Hughes Texas Bar No. 10227300<br>Ian Peck<br>Texas Bar No. 24013306<br>Christopher L. Castillo<br>Texas Bar No. 24065022<br>Haynes and Boone, LLP<br>1221 McKinney Street, Suite 2100<br>Houston, Texas  77010<br>Telephone:  (713) 547-2000<br>Facsimile:   (713) 547-2600 | */s/ John F. Higgins*<br>John F. Higgins<br>State Bar No. 09597500<br>Whitney V. Ables<br>State Bar No. 24069271<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>(713) 226-6000<br>(713) 226-6248 (fax) |
| **Counsel for the Debtors** | **Counsel to Wayzata Investment Partners, LLC and Wayzata Investment Partners Opportunities Fund II, L.P.** |
| **Lugenbuhl, Wheaton, Peck, Rankin & Hubbard** | |
| /s/ *Benjamin W. Kadden* | **Winston & Strawn LLP** |
| Mr. Stewart F. Peck<br>Louisiana Bar No. 10403, pro hac vice<br>Benjamin W. Kadden<br>Texas Bar No. 24077542<br>Joseph P. Briggett, pro hac vice<br>Louisiana Bar No. 33029<br>601 Poydras Street<br>Suite 2775<br>New Orleans LA 70130<br>Phone: (504) 568-1990<br>Fax: (504) 310-9195<br>E-mail: speck@lawla.com, bkadden@lawla.com, jbriggett@lawla.com | */s/ Nathan  P. Lebioda*<br>Mr. James M. Donnell<br>TBA#<br>Nathan P. Lebioda, pro hac vice<br>200 Park Avenue<br>New York NY 10166-4193<br>Phone: (212) 294-6812<br>Mobile: (212) 731-9457<br>Fax: (212) 294-4700<br>E-mail: jdonnell@winston.com |
| **Counsel for Leonard C. Tallerine, Jr. and Goldking LT Capital Corporation** | **Counsel for White Oak Energy V, LLC** |

EXHIBIT 1

# AMENDMENT NO. 5 TO CREDIT AGREEMENT
## AND
## AMENDMENT TO RATIFICATION AGREEMENT

**THIS AMENDMENT NO. 5 TO CREDIT AGREEMENT AND AMENDMENT TO RATIFICATION AGREEMENT** (this "Amendment") is made and entered into as of December _____, 2013, is by and among WAYZATA OPPORTUNITIES FUND II, L.P., a Delaware limited partnership, in its capacity as administrative agent (in such capacity, "Agent") acting for and on behalf of the Bank and Issuing Bank (each as defined in the Existing Credit Documents) party hereto, as lenders (collectively with Agent, the "Lenders"), GOLDKING RESOURCES, LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("Borrower"), GOLDKING HOLDINGS, LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("Holdco"), and GOLDKING ONSHORE OPERATING, LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("Operating," and together with Holdco, each, a "Guarantor" and collectively, "Guarantors").  Capitalized terms used but not defined herein shall have the meanings given to such terms in the Existing Credit Agreement (defined below) or, to the extent applicable, in the Ratification Agreement (as defined in the Existing Credit Agreement).

## W I T N E S S E T H:

**WHEREAS**, Borrower and Guarantors are parties to that certain Credit Agreement dated as of November 5, 2010 (as amended by Amendment No. 1 to Credit Agreement dated as of April 29, 2011, Amendment No. 2 to Credit Agreement dated as of June 15, 2011, Amendment No. 3 to Credit Agreement and Waiver dated as of January 24, 2013, Amendment No. 4 to Credit Agreement and Waiver dated as of January 24, 2013, the Ratification Agreement, and as further amended, restated, supplemented, modified, or replaced, the "Existing Credit Agreement"), with, inter alia, Bank of America, N.A., in its capacity as the original Agent, as original Bank and as original Issuing Bank (in such capacities, the "Original Lenders"), pursuant to which Original Lenders made loans and advances and provided other financial or credit accommodations to Borrower secured by substantially all assets and properties of Borrower and Guarantors as set forth in the Existing Credit Documents;

**WHEREAS**, on January 24, 2013, the Original Lenders assigned and delegated to the Lenders, and Lenders purchased and assumed from the Original Lenders, all of the Original Lenders rights and obligations under the Existing Credit Documents, and the Lenders agreed to make loans and advances and provide other financial or credit accommodations to Borrower secured by substantially all assets and properties of Borrower and Guarantors as set forth in the Existing Credit Documents;

**WHEREAS**, on October 30, 2013, Borrower and Guarantors commenced cases under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware, and Borrower and Guarantors have retained possession of their assets and are authorized under the Bankruptcy Code to continue the operation of their businesses as debtors-in-possession;

**WHEREAS**, the Bankruptcy Court has entered a Financing Order pursuant to which Agent and Lenders may make post-petition loans and advances, and provide other financial accommodations, to Borrower secured by substantially all the assets and properties of Borrower and Guarantors as set forth in the Financing Order and the Credit Documents;

**WHEREAS**, as a condition to the making of such post-petition loans, advances and other financial accommodations, and in accordance with the Financing Order, Borrower and Guarantors have executed and delivered the Ratification Agreement to Agent and Lenders, pursuant to which Borrower and Guarantors have reaffirmed their obligations to Agent and Lenders pursuant to the Existing Credit Documents and acknowledged their continuing liabilities to Agent and Lenders thereunder in order to induce Agent and Lenders to make such post-petition loans and advances, and provide such other financial accommodations, to Borrower; and

**WHEREAS**, Borrower and Guarantors have requested that Agent and Lenders make certain amendments to the Credit Documents in order to conform the terms thereof to those of the Financing Order, and Agent and Lenders are willing to do so, subject to the terms and conditions contained herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and the fulfillment of the conditions set forth herein, the parties hereby agree as follows:

1.      <u>Definitions</u>.  The terms "Credit Agreement," "Existing Credit Agreement," "Ratification Agreement," or "Agreement" (as the case may be) as used herein, in the Existing Credit Agreement, the Ratification Agreement, and in the other Credit Documents shall mean the Existing Credit Agreement and the Ratification Agreement as hereby amended and modified, and as further amended, restated, modified, replaced or supplemented from time to time in accordance with the terms thereof.

2.      <u>Amendments to Credit Documents</u>.  Notwithstanding anything to the contrary herein, in the Credit Agreement, in any other Credit Document, or otherwise, subject to the terms and conditions hereof, the Credit Agreement, the Ratification Agreement, and the other Credit Documents are hereby amended, effective as of the date hereof, as follows:

(a)      <u>General Amendments to and Modifications of Credit Documents</u>.  The parties hereto hereby agree that the provisions in this Amendment, to the extent inconsistent with the provisions of the Credit Agreement or the Ratification Agreement, will be deemed to be an amendment of the provisions of the Credit Agreement, the Ratification Agreement, and the other Credit Documents to the extent set forth herein, and the remaining provisions shall be deemed to supplement the Credit Documents as stated herein.

(i)      The provisions in the Credit Agreement concerning the Borrowing Base (including, but not limited to, the availability of Advances to Borrower being limited to the Borrowing Base in effect at the time of any such Advance) are hereby suspended until further agreed to in writing by Agent and Lenders.

2

(ii)    The White Oak Lien (as defined in the Financing Order) shall constitute a Permitted Lien under the Credit Agreement and the other Credit Documents to the extent provided in the Financing Order.

(b)    <u>Amendment to Section 1.1 of the Credit Agreement.</u>

(i)    <u>Section 1.1</u> of the Credit Agreement is hereby amended to amend and restate the definition of "<u>Commitment</u>" as follows:

"<u>Commitment</u>" means, for any Bank, the amount set opposite such Bank's name on <u>Annex 1</u> as its Commitment, or if such Bank has entered into any Assignment and Acceptance, as set forth for such Bank as its Commitment in the Register maintained by the Agent pursuant to <u>Section 9.6(c)</u>, as such amount may be reduced or terminated pursuant to <u>Article VII</u>, provided that in no event will the Commitment of Wayzata Opportunities Fund II, L.P., a Delaware limited partnership, as Bank, exceed $17,100,000.00.

(ii)    <u>Section 9.2(a)</u> of the Credit Agreement is hereby amended by restating the first sentence as follows:

Except as provided in clause (b) below, all notices and other communications shall be in writing (including, without limitation, telecopy or telex) and mailed by certified mail, return receipt requested, telecopied, telexed, hand delivered, or delivered by a nationally recognized overnight courier, at the address for the appropriate party specified below or at such other address as shall be designated by such party in a written notice to the other parties.

| | |
|---|---|
| If to any of the Credit Parties: | 777 Walker Street |
| | Suite 2500 |
| | Houston, TX 77002 |
| | Attn: Edward J. Hebert |
| | Telephone:  713-228-5464 |
| | Telecopy:  713-230-9590 |
| | |
| with a copy to: | Young Conaway Stargatt & Taylor, LLP |
| | 1000 North King Street |
| | Wilmington, DE 19801 |
| | Attention:  Robert S. Brady, Esq. |
| | Telephone:  302-571-6690 |
| | Telecopy:  302-576-3283 |
| | |
| with a copy to: | Haynes and Boone, LLP |
| | 1221 McKinney Street, Suite 2100 |
| | Houston, Texas 77010 |
| | Attention:  Patrick L. Hughes |

3

|  | Telephone:  713-547-2000 |
|  | Telecopy:  713-547-2600 |

If to Agent:          Wayzata Opportunities Fund II, LP
                      701 East Lake Street
                       Suite 300
                      Wayzata, MN 55391
                      Attention:  Blake Carlson
                      Telephone: 952-345-0700
                      Telecopy: 952-345-8901

with a copy to:       Richards, Layton & Finger, P.A.
                      920 N. King Street
                      Wilmington, Delaware 19801
                      Telephone:  302-651-7700
                      Telecopy:  302-651-7701
                      Attention:  John H. Knight, Esq.
                                  Mark A. Kurtz, Esq.

with a copy to:       Porter Hedges LLP
                      1000 Main Street, 36th Floor
                      Houston, Texas 77002
                      Attention:  John F. Higgins
                      Telephone:  713-226-6648
                      Telecopy:  713-226-6628

(c)     Amendments to the Ratification Agreement.   Subject to the conditions hereof, the Ratification Agreement is hereby amended, effective as of the date hereof, as follows:

(i)     Section 1.1(b) of the Ratification Agreement is hereby amended to amend and restate the definition of "Bankruptcy Court" as follows:

"Bankruptcy Court" shall mean the United States Bankruptcy Court or the United States District Court for the District of Delaware for all purposes on or prior to the date of November 20, 2013 and the United States Bankruptcy Court or the United States District Court for the Southern District of Texas on an after the date of November 21, 2013.

(ii)     Section 1.1(w)(iv) of the Ratification Agreement is hereby amended to delete the phrase "including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code".

(iii)     Section 5.3(a) of the Ratification Agreement is hereby amended to add the following language at the end of Section 5.3(a):

4

Agent and Lenders agree that the variance reports otherwise due on November 14, 2013; November 21, 2013; November 28, 2013, and December 5, 2103 shall be deemed timely if submitted on or before December 12, 2013.

(iv)    Section 5.4 of the Ratification Agreement is hereby amended to add the following language new *clause (e)* at the end of such Section:

(e)    The filing of the *Debtors' Application for an Order, Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rules 2014-1, 2016-1, and 2016-2, (i) Authorizing the Retention of E-Spectrum Advisors LLC as Asset Sale Advisor, Nunc Pro Tunc to the Petition Date, and (ii) Waiving Certain Requirements of Local Rule 2016-2 in Connection Therewith* on November 19, 2013 shall be deemed to satisfy the deadlines contained in Sections 5.4(b) and 5.4(d) hereof.

(v)    Section 9.1 of the Ratification Agreement is hereby amended in its entirety to the extent necessary to conform the provisions thereof regarding Pre-Petition Released Claims to the release provisions set forth in Section 4.5 of the Permanent Financing Order.

(vi)    Section 10.12 of the Ratification Agreement is hereby amended to delete the references to "thirty (30) days" and "thirtieth (30th) day" where they appear and replace them, respectively, with "forty-five (45) days" and "forty-fifth (45th) day".

(vii)    Section 11.1 of the Ratification Agreement is hereby amended to delete the reference to "ninety (90) days)" where it appears and replace it with "one hundred twenty (120) days".

(viii)    Section 11.3 of the Ratification Agreement is hereby amended to delete the reference to "one hundred fiftieth day (150th) day" where it appears and replace it with "one hundred eightieth day (180th)".

3.    Counterparts.  This Amendment may be executed in one or more counterparts, each of which shall be deemed an original (including electronic copies) but all of which together shall constitute one and the same instrument.

4.    Governing Law.  This Amendment shall in all respects be governed by, and construed in accordance with, the laws of the State of Texas.

5.    Enforceability.  Should any one or more of the provisions of this Amendment be determined to be illegal or unenforceable as to one or more of the parties hereto, all other provisions nevertheless shall remain effective and binding on the parties hereto.

6.    No Novation.  This Amendment is given as an amendment and modification of, and not as a payment of, the obligations of each Credit Party under the Credit Agreement and is

5

not intended to constitute a novation of the Credit Agreement.  All of the indebtedness, liabilities and obligations owing by any Credit Party under the Credit Agreement and the other Credit Documents shall continue.

       7.     <u>Successors and Assigns</u>.  This Amendment shall be binding upon and inure to the benefit of the Borrower, the Agent, the Banks, the Issuing Bank and their respective successors, assigns and legal representatives; <u>provided</u>, <u>however</u>, that the Borrower, without the prior consent of the Banks, may not assign any rights, powers, duties or obligations hereunder.

       8.     <u>Expenses</u>.  Without limiting the provisions of <u>Section 9.4</u> of the Credit Agreement or <u>Section 12.6</u> of the Ratification Agreement, Borrower agrees to pay to Agent and Lenders on demand all reasonably costs and expenses that Agent or any Lender pays or incurs in connection with the negotiation, preparation, consummation, administration, enforcement, and termination of this Amendment, the Credit Agreement, the Ratification Agreement, the other Credit Documents, and the Financing Order, subject to the terms and provisions of the Financing Order.

**[*Remainder of Page Intentionally Left Blank; Signature Pages Follow*.]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be duly executed by their duly authorized officers, all as of the day and year first above written.

<u>**BORROWER**</u>**:**

**GOLDKING RESOURCES, LLC**
By: Goldking Holdings, LLC, its sole member


By:_____
Name:  Edward Hebert
Title:   Chief Executive Officer

**AGENT**:

**WAYZATA OPPORTUNITIES FUND II, L.P.,**
as Agent
By: WOF II GP, L.P., its General Partner
By: WOF II GP, LLC, its General Partner


By:_____
Name:_____
Title:_____


**BANK**:

**WAYZATA OPPORTUNITIES FUND II, L.P.,**
as Bank
By: WOF II GP, L.P., its General Partner
By: WOF II GP, LLC, its General Partner


By:_____
Name:_____
Title:_____


**ISSUING BANK**:

**WAYZATA OPPORTUNITIES FUND II, L.P**.,
as Issuing Bank
By: WOF II GP, L.P., its General Partner
By: WOF II P, LLC, its General Partner


By:_____
Name:_____
Title:_____

## REAFFIRMATION OF GUARANTIES

By signing below, each Guarantor (a) acknowledges, consents and agrees to the execution, delivery and performance by the Borrower of this Amendment, (b) acknowledges and agrees that its obligations in respect of (i) its Guaranty, (ii) any Mortgages (as defined in the Credit Agreement) and any other Security Documents (as defined in the Credit Agreement) to which it is a party, and (iii) the Ratification Agreement (including, but not limited to, the grant of security interest and the ratification and guarantee provided for therein), are not released, diminished, waived, modified, impaired or affected in any manner by this Amendment or any of the provisions contemplated herein, (c) ratifies and confirms its obligations under (i) its Guaranty, (ii) any Mortgages (as defined in the Credit Agreement) and any other Security Documents (as defined in the Credit Agreement) to which it is a party, and (iii) the Ratification Agreement (including, but not limited to, the grant of security interest and the ratification and guarantee provided for therein), and (d) acknowledges and agrees that it has no claims or offsets against, or defenses or counterclaims to, its Guaranty.

**GUARANTORS:**

GOLDKING HOLDINGS, LLC


By:_____
Name:  Edward Hebert
Title:   Chief Executive Officer


GOLDKING ONSHORE OPERATING, LLC
By: Goldking Holdings, LLC, its sole member


By: _____
Name:  Edward Hebert
Title:   Chief Executive Officer

**<u>Exhibit 2</u>**

**<u>Budget</u>**

Date: 12/5/2013

**GOLDRING HOLDINGS, LLC**
**PROJECTED DIP FINANCING BUDGET**

(Dollars in Thousands)

| | Actual File Ch.11 11/01/13 | Actual 11/08/13 | Actual 11/15/13 | Actual 11/22/13 | Forecast 11/29/13 | Forecast 12/06/13 | Forecast 12/13/13 | Forecast 12/20/13 | Forecast 12/27/13 | Forecast 01/03/14 | Forecast 01/10/14 | Forecast 01/17/14 | Forecast 01/24/14 | Forecast 01/31/14 | Forecast 02/07/14 | Forecast 02/14/14 | Forecast 02/21/14 | Forecast 02/28/14 | Forecast 03/07/14 | Forecast 03/14/14 | Forecast 03/21/14 | Forecast 03/28/14 | Exit Ch.11 03/28/14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH INFLOWS - Operating Revenues** | | | | | | | | | | | | | | | | | | | | | | | |
| Total proceeds from sale of production - oil | - | - | 711 | 711 | - | 700 | - | 700 | - | 675 | - | 675 | 650 | - | 650 | - | 660 | - | 650 | - | 650 | - | 650 |
| Total proceeds from sale of production - gas/liquids | - | 221 | 27 | - | 25 | 475 | 20 | 450 | - | 450 | - | 450 | - | 450 | - | 450 | - | 450 | - | 450 | - | 450 | 450 |
| Royalty payment to Texas GLO | - | (28) | (39) | - | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) |
| Royalty and working interest payments | - | - | - | - | (550) | - | - | - | (550) | - | - | - | - | - | - | (500) | - | - | - | - | - | - | (500) |
| **NET OPERATING REVENUES** | - | 193 | 699 | 711 | (550) | 1,150 | (5) | 1,125 | (575) | 1,100 | (25) | 1,100 | 625 | 425 | 625 | (575) | 635 | 425 | 625 | 425 | 625 | 425 | 575 |
| **CASH INFLOWS - Other** | | | | | | | | | | | | | | | | | | | | | | | |
| Receipts of JIB invoices billed to owners | - | 4 | 2 | 9 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 |
| Receipts of PHA fees | - | - | 9 | - | - | 9 | - | - | 9 | - | - | 9 | - | - | 9 | - | - | 9 | - | - | 9 | - | - |
| Hedging settlements | - | - | - | - | 25 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Insurance proceeds | - | - | - | - | - | - | - | - | - | - | - | 100 | - | - | - | - | - | - | - | - | - | - | - |
| DIP Draws | 1,500 | 1,500 | - | - | 1,500 | - | - | - | 1,500 | - | - | - | - | - | - | 1,000 | - | - | - | - | - | - | - |
| **TOTAL CASH INFLOWS** | - | 1,697 | 720 | 711 | (35) | 1,474 | 35 | 715 | (85) | 1,465 | 24 | 699 | (10) | 675 | (10) | 974 | 665 | 665 | (35) | 665 | (10) | 665 | (35) |
| **CASH OUTFLOWS - Operating Expenses** | | | | | | | | | | | | | | | | | | | | | | | |
| Lease operating expenses | - | - | - | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Production (severance) taxes | - | - | 23 | - | 17 | 8 | 17 | 8 | 17 | 8 | 17 | 8 | 17 | 8 | 17 | 8 | 17 | 8 | 17 | 8 | 17 | 8 | - |
| Ad valorem taxes | - | - | - | - | 100 | 353 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | - | 200 | - | 200 | - | - | - | - | - | - |
| Plug and abandonment costs - Kent Bayou [2] | - | - | 41 | 30 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | - |
| Contract labor (temporary employees) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Insurance - employee health/dental/etc | - | - | 18 | - | 19 | 50 | 19 | 50 | 19 | 50 | 19 | 50 | 19 | 50 | 19 | 50 | 19 | 50 | 19 | 50 | 19 | 50 | - |
| Insurance - premiums for Jan 14 - Feb 14 coverage [1] | 1,500 | - | 52 | - | - | - | - | 1,500 | - | 1,500 | - | - | 1,000 | - | - | - | - | - | - | - | - | - | - |
| Office rent | - | - | 35 | 35 | 35 | - | 35 | - | 35 | - | 35 | - | 35 | - | 35 | - | 35 | - | 35 | - | 35 | - | - |
| Pay critical / lien vendors post petition [3] | 410 | - | 407 | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Utilities deposit fund [4] | 3 | - | - | - | - | - | - | 126 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 714 |
| Employee retention agreements | - | - | 1 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other general & administrative expenses | (8) | 7 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL OPERATING CASH OUTFLOWS** | 405 | 7 | 577 | 403 | 100 | 157 | 228 | 487 | 200 | 367 | 479 | 48 | 974 | 207 | 137 | 190 | 207 | 137 | 207 | - | - | - | 904 |
| **CASH FLOW FROM OPERATIONS** | (405) | 48 | 184 | 525 | (65) | 1,317 | 157 | 228 | 200 | 479 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **CASH OUTFLOWS - Non Operating Expenses** | | | | | | | | | | | | | | | | | | | | | | | |
| Lease / rental payments | - | - | - | - | - | - | - | - | 5 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Seismic data purchases - Seitel [5] | - | - | - | - | - | - | - | - | - | - | - | 190 | - | 255 | - | - | - | - | - | - | - | - | - |
| Payment to White Oak Energy - consent to assign | - | - | - | - | 161 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP facility fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional fees - litigation counsel | - | - | 100 | - | - | - | - | 100 | - | - | - | - | 100 | - | - | 100 | - | - | 100 | - | - | 100 | - |
| Professional fees - bankruptcy counsel [8] | - | - | 350 | - | - | 300 | - | - | 300 | - | - | 250 | - | 250 | - | 250 | - | - | 250 | - | - | 250 | - |
| Professional fees - creditor committee [8] | - | - | 15 | - | - | 15 | - | - | 15 | - | - | 15 | - | 15 | - | 15 | - | - | 15 | - | - | 15 | - |
| Professional fees - bankruptcy support fees [6] | - | - | 50 | - | 110 | - | 64 | - | - | - | - | 55 | - | 55 | - | 55 | - | - | 55 | - | - | 55 | - |
| US Trustee fees | - | - | 10 | - | - | - | - | 10 | - | - | 10 | - | 10 | - | - | 10 | - | - | 10 | - | - | 10 | 10 |
| **TOTAL NON OPERATING CASH OUTFLOWS** | - | 48 | 536 | 928 | 271 | 157 | 200 | 489 | 205 | 430 | 255 | - | 207 | - | 190 | - | 207 | - | 430 |
| **TOTAL CASH OUTFLOWS** | 405 | 48 | 536 | 928 | 371 | 157 | 228 | 487 | 205 | 367 | 479 | 430 | 255 | 207 | 137 | 190 | 207 | 137 | 207 | - | - | - | 1,334 |
| **NET CASH INFLOW (OUTFLOW)** | 1,292 | (58) | 184 | 455 | 119 | 1,436 | 228 | 374 | 159 | 1,254 | 211 | 159 | 1,257 | 211 | 255 | 207 | 528 | (655) | 207 | 137 | 956 | | |
| **CUMULATIVE POST PETITION CASH FLOW** | 1,292 | 1,234 | 1,418 | 1,873 | 1,486 | 1,664 | 1,317 | 1,043 | 1,254 | 1,098 | 1,043 | 1,326 | 767 | 1,854 | 1,199 | 1,189 | 1,484 | 115 | | | 430 | | |

**Note:** Budget is operating cash flows only and does not take into account projected proceeds from the sale of assets.

[1] Estimated cash flow from close out of all hedging positions.
[2] Expected to start project first week of December. Estimated cash flows will be dependent on credit terms obtained by the company.
[3] Expected to pay $1 million in critical / lien vendor payments per court order. Additional $500,000 in critical / lien vendor subject to further court order not budgeted.
[4] Payment in December 2013 for retention payment #1; Payment in March 2014 for retention payment #2 and sale incentive TBD. Sale incentive based on certain percentage of price under agreements. All subject to court order.
[5] Seismic data purchases - subject to further discussion and future court order.
[6] Payment of $300,000 per Compromise and Forbearance Agreement not budgeted being as is expected to come from sales proceeds.
[7] Lender counsel fees and expenses shall be as presented in section 1.5 of the Final DIP Order.
[8] Epic ($50,000/month) and Energy Spectrum ($100,000 initial fee + out of pocket fees); $8,500 12/31 paid to Lantana subject to court order.